**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ABC Sand and Rock Company, Inc.; and David Waltemath,<br><br>Plaintiffs,<br><br>v.<br><br>County of Maricopa; Flood Control District of Maricopa County; William Wiley and Unknown Wiley; Ed Raleigh and Unknown Raleigh; Anthony Beuche and Unknown Beuche; Michael Fulton and Unknown Fulton; and Scott Vogel and Unknown Vogel,<br><br>Defendants. | No. CV-21-01875-PHX-DGC<br><br>**ORDER** |

Defendants have filed a motion to dismiss. Doc. 13. The motion is fully briefed (Docs. 13, 16, 17) and oral argument will not aid the Court's decision, *see* LRCiv 7.2. For reasons stated below, the Court will grant the motion as to the individual Defendants and deny it as to the remaining Defendants. Plaintiffs will also be granted leave to amend.

**I.    Background.**

This case is the latest in a longstanding dispute between ABC Sand and Rock Company ("ABC") and its owner, David Walmath (collectively, "Plaintiffs"), and the Flood Control District of Maricopa County (the "District"). ABC operates a sand and gravel mine in the floodplain at the confluence of the Agua Fria River and New River in Maricopa County, Arizona. Doc. 1 ¶¶ 25-26. The District regulates and issues five-year

permits for mining operations. *Id.* ¶¶ 20, 22-24. ABC mined under permits issued by the District from 1985-2011. *Id.* ¶ 28. In 2011, ABC applied to renew its permit. *Id.* ¶ 29. Disputes over this renewal led to extensive litigation both in this Court and Arizona state courts. *Id.*; *see ABC Sand & Rock Co., Inc. v . Maricopa Cnty.*, No. CV-17-01094-PHX-DGC, 2021 WL 3491947, at *1-4 (D. Ariz. Aug. 9, 2021) (discussing history of litigation between the parties).

As a result of the prior litigation, ABC's permit application process began anew in 2015. Doc. 1 ¶ 31; *ABC Sand & Rock Co.*, 2021 WL 3491947, at *2. The District issued a new permit on August 10, 2017 (the "Permit"). *Id.* ¶ 32. Because of concern that a 100-year flood of the New River could enter ABC's mining pit with a discharge of 39,000 cubic feet per second, the Permit required ABC to take certain actions and build certain structures on its land, and set time limits for ABC to do so. *Id.* ¶¶ 33-35. Plaintiffs allege that complying with the Permit's requirements has cost ABC more than $8 million. *Id.* ¶ 39. Plaintiffs assert that the requirements are based on an outdated 2001 report, rather than a report they received on March 23, 2021, which concluded that any 100-year flow would be only 19,600 cubic feet per second. *Id.* ¶¶ 33-34, 52-59.

Plaintiffs allege that the District chose to rely on the 2001 data – even though the District knew the data to be incorrect – because of expected benefits to its plan for a recreational corridor (the "Watercourse Master Plan") which would pass through ABC's property. *Id.* ¶¶ 50, 60-61. According to Plaintiffs, the Watercourse Master Plan would create a new spring training facility, involve "Main Street" mixed use initiatives and an airport expansion, and create parks and recreation facilities. *Id.* ¶ 49. Plaintiffs allege that the actions required of ABC by the Permit would inure to the District's benefit by allowing it to implement the Watercourse Master Plan at a lower cost. *Id.* ¶ 61.

Plaintiffs bring claims under 42 U.S.C. § 1983 alleging violations of the Takings Clause (Count I) and the Due Process Clause (Count II) of the Fifth Amendment. Plaintiffs seek declaratory and injunctive relief and damages.

///

## II. Legal Standard.

When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. Defendants' Motion to Dismiss.

Defendants argue that Plaintiffs' complaint should be dismissed because it is (A) untimely, (B) precluded by the doctrine of claim preclusion, and (C) fails to state a plausible claim for relief.

### A. Statute of Limitations.

Defendants argue that the applicable statute of limitations for actions brought under § 1983 in Arizona is two years. Doc. 13 at 4. (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004)). Defendants argue that Plaintiffs' claims accrued on August 10, 2017, the date the Permit was issued, because Plaintiffs knew on that date of the flow rate used by the District and that it would be required to comply with the terms of the Permit in order to extract further material from its mine. *Id.* at 5. Plaintiffs filed this lawsuit on November 4, 2021, more than four years after the Permit was issued. *See id.*

Plaintiffs argue that, under *Ranch 57 v. City of Yuma*, 731 P.2d 113, 117-18 (Ariz. Ct. App. 1986), regulatory takings claims are subject to a four-year statute of limitations, and alternatively that the four-year statute of limitations in 28 U.S.C. § 1658 applies under *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 377-78 (2004). Doc. 16 at 6. Plaintiffs further argue that the date of accrual does not depend on the date the Permit was issued, but on the dates ABC was required to take certain actions on its property pursuant to the

Permit. *Id.* at 4. Plaintiffs argue that a takings claim is not ripe until the governmental entity implementing regulations has reached a final decision regarding the application of the regulations to the property at issue, something that did not happen until ABC was required to take action on its land. *Id.* (citing *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019)). Plaintiffs assert that the earliest action required by the Permit was to take place by November 10, 2017. *Id.* at 5. Based on this date, Plaintiffs' action on November 4, 2021, was within the four-year statute of limitations. Plaintiffs finally argue that they did not discover that the District had relied on an incorrect flow rate until March 23, 2021, and the claim did not accrue before then. *Id.* at 6 (citing *Bennett v. City of Kingman*, 543 F. Supp. 3d 794 (D. Ariz. 2021)).

Defendants reply that, to the extent that *Ranch 57* suggests that the statute of limitations for § 1983 actions depends on the character of the constitutional right violated, it conflicts with *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987), which rejected such an argument. Doc. 17 at 3. Under *Goodman*, Defendants argue, all suits brought under § 1983 are subject to the statute of limitations for personal injury actions in the state where the suit is brought. *Id.* (citing *Goodman*, 482 U.S. at 661). Defendants also argue that § 1658's four-year statute of limitations does not apply to § 1983 actions because it applies only to federal claims created after 1991 or brought pursuant to a particular section of § 1981. *Id.* at 4. But even if the limitations period is four years, Defendants argue that Plaintiffs' claims are barred because Plaintiffs brought suit more than four years after the Permit was issued. *Id.* at 2. Defendants maintain that Plaintiffs' claims accrued when the Permit was issued, not when ABC took each action required by it. *Id.* Defendants also dispute Plaintiffs' reliance on *Knick*, arguing that it shows that Plaintiffs' claim accrued on issuance of the Permit because the action that allegedly constituted a taking of its property was the requirements imposed by the Permit, which incorporated the flow rate Plaintiffs argue is incorrect. *Id.*

Generally, plaintiffs are not required to plead around affirmative defenses. *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir.

2019). A statute of limitations defense may be raised by a motion to dismiss if the running of the statute is apparent on the face of the complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint."). Thus, "[a] motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Ortega v. Santa Clara Cnty. Jail*, No. 19-17547, 2021 WL 5855066, at *1 (9th Cir. Dec. 9, 2021) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995); *Jablon*, 614 F.2d at 682).

Section 1983 does not contain its own statute of limitations. Courts must borrow the forum state's statute of limitations for personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Cholla Ready Mix*, 382 F.3d at 974. "The applicable statute of limitations for personal injury claims in Arizona is two years." A.R.S. § 12-542; *Cholla Ready Mix*, 382 F.3d at 974.

Plaintiffs' arguments that the statute of limitations should be four years are unavailing. Their argument that § 1658's four-year period applies to § 1983 actions has been rejected by the Ninth Circuit. *Cholla Ready Mix*, 382 F.3d at 974 n.5. Indeed, the court in *Cholla Ready Mix* specifically considered *Jones v. R.R. Donnelley & Sons*, the case Plaintiffs cite in support of the applicability of § 1658. And *Jones* itself acknowledges that "§ 1658 applies only to claims arising under statutes enacted after December 1, 1990." 541 U.S. at 380. Claims brought under § 1983 – which is more than 100 years old – "[are] not made possible by a post-1990 statute or amendment and thus are not covered by § 1658's four-year limitations period." *Cholla Ready Mix*, 382 F.3d at 974 n.5.

Plaintiffs also take issue with *Cholla Ready Mix*'s citation to *Wilson v. Garcia*, 471 U.S. 261 (1985), for the applicability of state personal injury periods, arguing that *Jones* overruled *Wilson* on this point. Doc. 16 at 6. Plaintiffs are incorrect that *Jones* overruled

*Wilson* on this particular point, however, as shown by the Supreme Court's continued citation to *Wilson*, after *Jones*, for the point that the statute of limitations for § 1983 claims is the state's personal injury limitations period. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.") (citing *Wilson*).

Plaintiffs' citation to *Ranch 57* is also unavailing. *Ranch 57* did hold that a takings claim was subject to a four-year statute of limitations, 731 P.2d at 118, but it appears to be at odds with *Wilson*, which rejected the argument that the nature of the constitutional right is relevant to identification of the correct limitations period for § 1983 claims. *See Goodman v. Lukens Steel Co.*, 482 U.S. at 660-61 ("In *Wilson*, . . . there were three holdings: for the purpose of characterizing a claim asserted under § 1983, federal law, rather than state law, is controlling; a single state statute of limitations should be selected to govern all § 1983 suits; and because claims under § 1983 are in essence claims for personal injury, the state statute applicable to such claims should be borrowed."). Despite being decided after *Wilson*, *Ranch 57* did not acknowledge or discuss *Wilson* at all. *See* 731 P.2d at 118. Moreover, courts in Arizona considering § 1983 claims similar to ABC's routinely apply the limitations period for personal injury actions. *See*, *e.g.*, *Bennett v. City of Kingman*, 543 F. Supp. 3d 794, 805 (D. Ariz. 2021) (applying two-year statute of limitations to § 1983 claims for violations of Takings and Due Process Clauses); *Hasbrouck v. Yavapai Cnty.*, No. CV-20-08112-PCT-DWL, 2021 WL 321894, at *8 (D. Ariz. Feb. 1, 2021) (same); *Kunzelman v. City of Scottsdale*, No. CV-10-0056-PHX-GMS, 2011 WL 3510883, at *2 (D. Ariz. Aug. 10, 2011) (same).

With two years identified as the correct limitations period, the Court must determine when Plaintiffs' § 1983 claims accrued. Under governing federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). This discovery rule

requires that "[t]he plaintiff . . . be diligent in discovering the crucial facts" of its case. *Bibeau v. Pac. Nw. Rsch. Found., Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999).

The Court cannot determine at this point when Plaintiffs' claims accrued. The parties' arguments boil down to factual ones: Defendants argue that Plaintiffs knew or should have known of their injury on issuance of the Permit because the Permit incorporated the flow rate Plaintiffs now claim is outdated and inflated; Plaintiffs counter they did not know that the flow rates were erroneous or that they could challenge the Permit's conditions until they received a more up-to-date study in 2021.[1] The Permit and other factual material are not before the Court at this early stage in the litigation. Because Defendants' statute of limitations defense "raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *ASARCO, LLC*, 765 F.3d at 1004.

### B.   Claim Preclusion.

Defendants argue that Plaintiffs' claims are barred by claim preclusion because they are "the latest in a string of suits by ABC claiming fault with the District's and its employees' handling of [its] permitting issues." Doc. 13 at 7. Defendants assert that Plaintiffs' claims could have been brought in their 2017 lawsuit before this Court (the "2017 federal lawsuit"), which complained of the District's handling of ABC's permit application process. *Id.* Defendants argue that because the two lawsuits arise out of the same transactional nucleus of facts and involve the same parties (with the exception of Defendant Fulton, who was not party to the 2017 lawsuit), and the 2017 federal lawsuit ended in a final judgment on the merits, claim preclusion bars Plaintiffs' claims. *Id.*

---

[1] Plaintiffs also argue that their claims accrued on the dates ABC was required to take actions on its property pursuant to the Permit, and characterize each of the actions required of it as takings. Doc. 16 at 5-6. The dates Plaintiffs allege the Permit required ABC to act, however, were between November 10, 2017, and August 10, 2019 (*id.* at 6), each more than two years before this lawsuit was filed on November 4, 2021. The only argument Plaintiffs make in their brief that would bring the action within the two-year statute of limitations, then, is that "because [they] did not know the Defendants utilized the incorrect flow rate for determining reasonable protections until March 23, 2021, the claim was not discovered until that date." *Id.* The complaint alleges that on March 23, 2021, Plaintiffs received a report that the flow rate was substantially lower than the rates incorporated into the Permit. Doc. 1 ¶¶ 52, 59. Plaintiffs do not specifically respond to arguments by Defendants that they should have known of their claims earlier, nor can the Court resolve such a fact-dependent inquiry on a motion to dismiss.

- 7 -

Plaintiffs respond that their claims are not barred because they filed the 2017 federal lawsuit before the Permit was issued, and the suit focused on the application process, not issuance of the Permit and the conditions it imposed. Doc. 16 at 8.

Defendants reply that the claims Plaintiffs bring in this lawsuit could have been brought in 2017 federal lawsuit because it is the ordinance underlying the Permit's conditions – enacted in 2001 – that effected the taking at issue, not the issuance of the Permit. Doc. 17 at 9 (citing *Fallini v. United States*, 56 F.3d 1378, 1383 (Fed. Cir. 1995); *De Anza Properties X, Ltd. v. Cnty. of Santa Cruz*, 936 F.2d 1084 (9th Cir. 1991)).[2] Thus, Defendants argue, Plaintiffs could have brought these claims in the 2017 federal lawsuit and are precluded from bringing them now. *Id.*

Claim preclusion, also called res judicata, "bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits." *United States ex rel. Barajas v. Northrup Corp.*, 147 F.3d 905, 909 (9th Cir. 1998). Claim preclusion applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (citations omitted). Identity of claims exists when two suits "arise from the same transactional nucleus of facts." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (internal quotation marks and citation omitted). "[T]he inquiry about the 'same transactional nucleus of facts' is the same inquiry as whether the claim could have been brought in the previous action" because "'[i]f the harm arose at the same time, then there was no reason why the plaintiff could not have brought the claim in the first action.'" *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039

---

[2] The Court notes that Defendants do not cite any particular ordinance underlying the Permit, stating only that the ordinance was enacted in 2001 and that Plaintiffs admit to that date. *See* Doc. 17 at 9. Because it is not clear what ordinance Defendants refer to, the Court cannot accept that its enactment date was 2001. The only reference to 2001 in materials filed by Plaintiffs that the Court is aware of is the date of the study upon which the allegedly inaccurate flow rate is based. *See* Doc. 1 ¶ 33. For the purposes of this order only, the Court assumes, but does not find, that the flow rate utilized by the District became effective in 2001.

(9th Cir. 2017) (quoting *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011)).

The Ninth Circuit has held that "for the purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint." *Id.* at 1040. This is a "bright-line rule which asks only whether a claim could have been brought at the time the operative complaint in the prior suit was filed" and is justified by the "importance of 'certainty and predictability.'" *Id.* "Absent such rule, [courts] would be left with the more difficult question of whether . . . plaintiff[s] could have amended [their] complaint in the midst of litigation to add claims which accrued after filing," despite the rule that, apart from one-time amendments early in litigation, plaintiffs can only amend with the consent of opposing parties or by leave of the court. *Id.*[3]

Plaintiffs filed the complaint in the 2017 federal lawsuit on April 7, 2017. *See* Doc. 1-3 at 105; *see also ABC Sand & Rock Co.*, 2021 WL 3491947, at *3. As discussed above, the date on which Plaintiffs' claims accrued is a question of fact not amenable to resolution on this motion. The Court therefore cannot determine at this point whether claim preclusion could apply to bar Plaintiffs' suit. Defendants can raise the issue again on a more factually complete record, either at summary judgment or trial.

The Court is not persuaded by Defendants' argument that the "issuance of the [P]ermit could not trigger a taking of ABC's property" and that the taking was triggered instead by enactment of the underlying ordinance in 2001. Doc. 17 at 9. In support of this argument, Defendants rely on *De Anza Properties X, Ltd. v. Cnty. of Santa Cruz*, 936 F.2d 1084 (9th Cir. 1991). In *De Anza*, the plaintiffs brought a facial challenge to a county's mobile home rent control ordinance, alleging that it constituted a taking without just compensation. *Id.* at 1085. The district court dismissed the claims, finding that they had accrued on passage of the ordinance and were thus untimely. *Id.* The plaintiffs argued on

---

[3] The Second, Third, Sixth, Seventh, Tenth, and Eleventh Circuits have adopted similar bright-line rules. *See Morgan v. Covington Tp.*, 648 F.3d 172, 177-78 (3d Cir. 2011) (joining the "[f]ive other Courts of Appeals [that] have already adopted a bright-line rule that *res judicata* does not apply to events post-dating the filing of the initial complaint" and collecting cases).

appeal that their claims accrued either when the ordinance was amended to eliminate a sunset provision or when each mobile home was sold. *Id.* at 1086. The Ninth Circuit affirmed the district court, holding that the claims were barred by the statute of limitations and that the plaintiff's claims accrued on passage of the original ordinance. *Id. De Anza* thus stands for the proposition that "a facial challenge to a statute as a taking without just compensation under section 1983 accrues upon passage of the ordinance." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993) (discussing and citing *De Anza*). But Plaintiffs do not bring a facial challenge to the ordinance under which the Permit was issued. They bring an as-applied challenge. *See generally id.* at 686 (noting "important distinction" between facial and as-applied takings claims and the accrual issues they raise).

Moreover, in rejecting the plaintiffs' arguments that the amendment of the ordinance re-started the limitations period, *De Anza* observed:

> The flaw in this theory is that the provision of the ordinance which they challenge has remained exactly the same since 1982. The conduct of the county has thus remained exactly the same at all times material to this case, and the effect of the ordinance upon the plaintiffs has not altered. Appellants were experiencing substantially the same injury in 1982 that they experienced in 1987. They were on notice that their property interests would be affected by the ordinance at the time it was enacted.

*De Anza*, 936 F.2d at 1086. The same conditions are not present here. Even assuming the ordinance underlying the Permit was enacted in 2001, it appears from the complaint that the conduct of the District in applying the ordinance to ABC's property was not "exactly the same at all times material to this case." *See id.* Plaintiffs allege that ABC's five-year floodplain use permits were "routinely renewed by the District" from 1985 to 2011. It is not apparent, therefore, that Plaintiffs experienced "substantially the same injury" beginning from 2001 until the issuance of the Permit.

Nor is the Court persuaded by Defendants' reliance on *Fallini v. United States*, 56 F.3d 1378 (Fed. Cir. 1995). In *Fallini*, the plaintiffs grazed cattle on federally owned land abutting their ranch pursuant to a permit, and the plaintiffs had developed water sources on the public land. *Id.* at 1380. Pursuant to a federal statute, the plaintiffs were prohibited from fencing off the water sources to prevent wild horses from accessing it and asserted

takings claims against the federal government. *Id.* The district court dismissed the claims, finding that no property right had been taken by government action. *Id.* at 1379. The Federal Circuit affirmed the dismissal of the action, but did so on statute of limitations grounds, finding that the plaintiffs' claims had accrued on passage of the applicable federal statute. *Id.* at 1383. Unlike this case, the injury the *Fallini* plaintiffs complained of came solely from the statute they challenged. Plaintiffs in this case complain of conditions imposed by the Permit which had not previously been imposed by other permits issued pursuant to the underlying ordinance.

### C.   Failure to State a Claim.

Defendants argue that Plaintiffs have not stated plausible claims for relief because the action that allegedly constituted a taking – utilization of an incorrect or out-of-date flow rate – is set by the Federal Emergency Management Agency ("FEMA"), not by the District or its employees. Doc. 13 at 6. Defendants explain that FEMA, as part of its duty to carry out the requirements of the national flood insurance program ("NFIP"), conducts flood hazard studies and determines flow rates. *Id.* at 2. FEMA uses these data to create Flood Insurance Rate Maps ("FIRMs"). *Id.* Defendants assert that Arizona law, as well as federal laws and regulations governing the NFIP, require communities to regulate in accord with FEMA's FIRMs. *Id.* at 3. Thus, Defendants argue, Plaintiffs' claims would be more appropriately brought against the state of Arizona or FEMA because the District could not have approved plans based on a flow rate other than the FEMA rate without breaking the law. *Id.* at 6. Defendants also argue that Plaintiffs' complaint fails to state plausible claims against the individually named defendants because it does not explain the bases on which each is liable. *Id.*

Plaintiffs respond that they do not challenge any federal agency action because, while FEMA does set the applicable flow rate, it does not decide which policies to enforce related to that rate, and the rate is based on data the District is required to provide. Doc. 16 at 7. Plaintiffs argue that the Arizona law that seeks to carry out the requirements of the NFIP also allows the District to grant permit variances, allowing the District to issue

permits that vary from the FEMA flow rate and still remain qualified under the NFIP. *Id.* (citing A.R.S. §§ 48-3609(M), 48-3609(B)(7); 42 U.S.C. § 4023). Plaintiffs also assert that they adequately state claims against the individually named Defendants because they are named in the complaint "for their actions in determining and enforcing the regulatory taking that is contained within the Permit." *Id.* at 8. Plaintiffs note that without the benefit of discovery, they are not able to state with more specificity the actions of each individual Defendant. *Id.* If the Court dismisses allegations against the individual Defendants, Plaintiffs request leave to amend their complaint with more precise allegations that they expect will be substantiated through discovery. *Id.*

Defendants raise a host of new arguments in their reply brief. Defendants argue that Plaintiffs have not claimed that ABC's ability to conduct mining activities on its land has been curtailed by the conditions imposed by the Permit, only that it had to expend extra money. Doc. 17 at 4. Defendants also argue that Plaintiffs have not stated a claim for a regulatory taking under the factors set out in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). *Id.* at 5-8.

The Court will not consider Defendants' new arguments. *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1002 (D. Ariz. 2011). Nor will the Court undertake a *Penn Central* analysis on a motion to dismiss. *See Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (observing that the *Penn Central* analysis consists of "'essentially ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances'") (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002)); Doc. 17 at 5 (Defendants' acknowledgment that "a *Penn Central* analysis generally requires a factual analysis of a claim and therefore is not subject to a motion to dismiss"); *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 614 (2013) (differentiating between regulatory takings and takings by way of monetary exaction).[4]

---

[4] The Court is especially hesitant to embark on a *Penn Central* analysis when the complaint does not rely on a regulatory taking theory – and indeed, never even mentions the phrase "regulatory taking." *See generally* Doc. 1. While Plaintiffs do characterize their claim as one for a regulatory taking in their response brief, the complaint uniformly alleges

- 12 -

The Court is not persuaded at this early stage by Defendants' argument that it had to enforce the FEMA-approved flow rates in the way that it did and thus that Plaintiffs can only make out plausible takings claims against the state of Arizona or FEMA. Plaintiffs allege that the conditions imposed by the Permit constituted takings by way of monetary exaction, and that because the flow rate underlying the conditions was out-of-date and inaccurate, the conditions lacked the requisite nexus and proportionality to mitigation of the impacts of ABC's mining activities. Doc. 1 ¶¶ 79, 81, 82. Defendants cite no authority from which the Court can conclude that the specific conditions it imposed through the Permit were the only way it could abide by state and federal law. Moreover, if the flow rate was established in 2001, as Defendants elsewhere argue, it would appear that prior permits had been issued to ABC utilizing this same flow rate without imposing the Permit's conditions. This supports an inference that the District could have abided its legal obligations without imposing the conditions allegedly giving rise to Plaintiffs' takings claim.

The Court finds, however, that Plaintiffs have failed adequately to allege involvement by the individually named Defendants in the claimed Constitutional violations. Plaintiffs allege only that these individuals are residents of Maricopa County. *See* Doc. 13 at 6; Doc. 1 ¶¶ 5-14. Plaintiffs argue in their response brief that these Defendants "are named in the Complaint for their actions in determining and enforcing the regulatory taking that is contained within the Permit" (Doc. 16 at 8), but no such allegations are found in the complaint. It is unclear from the complaint if the Defendants were

---

a taking based on monetary exaction and cites the *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), *Dolan v. City of Tigard*, 512 U.S. 374 (1994), and the *Koontz* line of cases to support the claim. Doc. 1 ¶¶ 75, 79, 81, 82, 89. The *Koontz* Court specifically found that it "need not apply *Penn Central*'s essentially ad hoc, factual inquiry at all, much less extend that already difficult and uncertain rule to the vast category of cases in which someone believes that a regulation is too costly," instead applying a *per se* takings approach to such claims. *Koontz*, 570 U.S. at 614 (internal quotations and citations omitted). In cases involving takings by monetary exaction, the Supreme Court applies the standard of *Nollan* and *Dolan*, under which "the government may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development, but it may not leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts." *Id.* at 606.

employed by the District or if some other relationship gave rise to their involvement in determination and enforcement of the Permit's conditions. The Court is mindful that prior to discovery it may be difficult for Plaintiffs to allege specific actions taken by each named Defendant, but they must provide more than simple allegations of residency in Maricopa County from which the Court can infer involvement in the actions of which Plaintiffs complain. The Court will dismiss Plaintiffs' complaint against the individually named Defendants, but grant Plaintiffs leave to amend their complaint to cure this deficiency.

**IT IS ORDERED**:

1. Defendants' motion (Doc. 13) is **granted** as to Defendants William Wiley, Ed Raleigh, Anthony Beuche, Michael Fulton, Scott Vogel, and their respective "unknown" spouses.

2. Plaintiffs are granted leave to amend their complaint as to the individually named Defendants. They shall file an amended complaint within two weeks of this order.

3. In all other respects, Defendants' motion (Doc. 13) is **denied**.

Dated this 23rd day of May, 2022.

*David G. Campbell*
David G. Campbell
Senior United States District Judge