**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ABC Sand and Rock Company, Inc.; and David Waltemath,<br><br>Plaintiffs,<br><br>v.<br><br>Maricopa County; Flood Control District of Maricopa County; William Wiley; Ed Raleigh; Anthony Beuche; Michael Fulton; Scott Vogel; and Jane Doe Spouses,<br><br>Defendants. | No. CV-21-01875-PHX-DGC<br><br>**ORDER** |

Plaintiff ABC Sand and Rock Company ("ABC") moves for a new trial or an amended judgment. Doc. 60. The Court will deny the motion.[1]

**I.   Background.**

This case is the latest in a longstanding dispute between ABC and the Flood Control District of Maricopa County (the "District"). ABC operates a sand and gravel mine in the floodplain at the confluence of the New and the Agua Fria Rivers in Maricopa County, Arizona. The District regulates and issues five-year permits for mining operations in floodplains. *See* A.R.S. §§ 48-3609(B)(1), 48-3613(A); Floodplain Regulations for Maricopa County §§ 401-04.

---

[1] ABC's owner, David Waltemath, passed away in September 2023. ABC has filed a notice dismissing Mr. Waltemath as a plaintiff and explaining that this action does not abate and will proceed with the remaining parties. Doc. 72 (citing Fed. R. Civ. P. 25(a)(2)).

1

ABC mined under permits issued by the District from 1985 to 2011. ABC applied to renew its permit in 2011. Disputes over this renewal and subsequent developments led to extensive litigation between the parties for the last decade. *See* Doc. 56 at 2 (discussing history of litigation between the parties); *ABC Sand & Rock Co., Inc. v. Maricopa Cnty.*, No. CV-17-01094-PHX-DGC, 2021 WL 3491947, at *1-8 (D. Ariz. Aug. 9, 2021) (same).

Despite this ongoing litigation, ABC submitted a proposed plan of development to the District and applied for a new permit in 2015. Doc. 44 ¶¶ 3, 14. ABC's previous permit allowed it to mine to a depth of 10 feet in the floodplain and up to 40 feet in the floodplain fringe, but the 2015 application sought authorization to mine to a depth of 60 feet. *Id.*; Doc. 46-3 at 3. ABC's engineer, Pedro Calza, completed the plan of development in July 2017. Docs. 44 ¶ 3, 44-2. The District approved the plan and issued ABC a new permit in August 2017 (the "Permit"). Docs. 44 ¶ 24, 44-14.

Arizona law requires flood control districts to regulate floodplains, which are areas in a watercourse that may be covered by water from a 100-year flood. *See* A.R.S. § 48-3601(6); *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 217 P.3d 1220, 1238 (Ariz. Ct. App. 2009). Because of concern that a 100-year flood of the New River could enter ABC's mining pit with a flow rate of 39,000 cubic feet per second ("cfs"), the Permit stipulated that ABC must stabilize the site, and established time limits for ABC to do so. Docs. 22 ¶¶ 40-41, 44-14 at 4-6. The stabilization includes excavation of the site and installation of armor on various slopes and berms. *Id.*

The 39,000 cfs flow rate underlying the Permit's stabilization requirements was based on a New River hydrology study conducted by the United States Army Corps of Engineers in 1982. Docs. 44 ¶¶ 9-10, 44-6. The Federal Emergency Management Agency ("FEMA") adopted that flow rate for purposes of its flood insurance rate map. Doc. 44 ¶ 11. For Maricopa County residents to remain eligible for flood insurance under FEMA's national flood insurance program, the District must regulate floodplains in accordance with FEMA-established flow rates. *Id.* ¶ 4.

In early 2017, ABC requested that a new hydrology study be made of the New River and submitted to FEMA. In response, the District commissioned Cardno Engineering Corporation to conduct the study and prepare a report. Docs. 46 ¶¶ 33-35, 46-37. The Cardno report was completed in September 2018 and concluded that the 100-year flow rate for the New River is 34,200 cfs, a rate at which the Permit's stabilization requirements would not change. Docs. 44 ¶ 25, 46 ¶ 45-48, 46-37 at 38. The District submitted the Cardno report to FEMA, which has tentatively approved the 34,200 cfs flow rate for use in its flood insurance rate maps. Doc. 43 at 10 n.4.[2]

ABC asserts that the Permit is based on outdated flow rate data for the New River and that the District has refused to review a report prepared by ABC's own consulting hydrologist, Patricia Dillon, in March 2021. Doc. 22 ¶¶ 58, 66. Dillon analyzed data from streamflow gages and opined that the flow rate for any 100-year flood would be no higher than 18,950 cfs. Doc. 46-42. ABC claims that complying with the Permit's stabilization demands has cost ABC more than $6 million, and that the stabilization requirements are not necessary under Dillon's lower flow rate. Docs. 22 ¶ 45, 45 at 3, 60 at 2.

ABC sued under 42 U.S.C. § 1983, alleging violations of the Fifth Amendment's Takings Clause (count one) and Due Process Clause (count two). Defendants moved to dismiss the original complaint (Doc. 1), arguing that it failed to state a plausible claim for relief and was barred by the statute of limitations and claim preclusion. Doc. 13. The Court granted the motion with respect to the individual Defendants, but denied it in all other respects. Doc. 18. ABC then filed an amended complaint. Doc. 22.

In count one, ABC asserts a "monetary exaction" takings claim under *Koontz v. St. Johns River Water Management District*, 570 U.S. 595 (2013). *Id.* ¶¶ 102-15. *Koontz* explained that "the government may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development, but it may not leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts." 570 U.S. at 606 (citing *Nollan v. Cal. Coastal Comm'n*,

---

[2] An engineering firm hired by ABC confirmed that the Cardno report's calculations are correct based on the information provided by the District. Doc. 46 ¶ 50.

483 U.S. 825, 837 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994)). ABC claims that the money it was required to spend on stabilizing the mining site "bear[s] no relation to the public interest of keeping a non-existent and completely theoretical flood, even a 100-year flood, at bay[,]" and is not "proportionate to the District's stated goal of preventing a flood[.]" Doc. 22 ¶¶ 110-11.

ABC alleges in count two that the Permit's stabilization requirements violate ABC's due process rights. *Id.* ¶¶ 118-23. The "irreducible minimum" of a "due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008). According to ABC, "[t]he District's restrictions on ABC do not rationally advance a legitimate governmental interest and are arbitrary." Doc. 22 ¶ 121.

Defendants moved for summary judgment on each claim. Doc. 43. The Court heard oral argument and granted the motion. Docs. 54, 56.

Regarding the takings claim, the Court determined that no jury reasonably could find that stabilization measures designed to reduce the effects of a 100-year flood in a river-bed mining site have no essential nexus to the legitimate government interest of protecting against risks from major flood events, and it is undisputed that the Permit's stabilization requirements are proportionate to a flood with a FEMA-established flow rate of 39,000 cfs. Doc. 56 at 6-8. The Court further found that Dillon's lower flow rate, even if valid, provides no basis for a constitutional takings claim because the District is required to apply FEMA flow rates in regulating floodplains. *Id.* at 9. And even if the District has relied on outdated data and has failed to submit new information to FEMA, ABC cited no legal authority suggesting that this would support a constitutional takings claim. *Id.* The Court also noted that while the District may grant variances from the regulations, ABC presented no evidence that it requested a variance and provided no persuasive reason to conclude that a local government's denial of a variance request gives rise to a Fifth Amendment taking. *Id.*

The Court granted summary judgment on the due process claim because stabilization requirements designed to mitigate the risks of a 100-year flood clearly serve a legitimate governmental purpose, even if the FEMA-established flow rate is based on outdated data. *Id.* at 10-11.

The Court further found that ABC's claims, even if viable, would be time-barred under the two-year statute of limitations. *Id.* at 11-15. The Court also determined that the individual Defendants are entitled to qualified immunity. *Id.* at 15-16.

ABC moves for relief under Federal Rule of Civil Procedure 59(a) (Doc. 60 at 2-3), but that rule does not apply because there was no trial in this case. *See Ferring v. Ace Priv. Risk Servs.*, No. CV-15-01168-PHX-SMM, 2017 WL 4653031, at *1 n.1 (D. Ariz. June 20, 2017). ABC also moves under Rule 59(e) to amend the judgment. Doc. 60 at 3.

**II.     Rule 59(e) Standard.**

The Ninth Circuit has repeatedly cautioned that relief under Rule 59(e) "is an extraordinary remedy which should be used sparingly." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)). "A Rule 59(e) motion should not be granted 'unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *McQuillion v. Duncan*, 342 F.3d 1012, 1014 (9th Cir. 2003) (quoting *McDowell*, 197 F.3d at 1255). "This requirement is a high hurdle for [the movant] to meet." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001).

**III.    Discussion.**

ABC presents no newly discovered evidence and does not assert that there has been an intervening change in the law. Nor does ABC challenge the Court's summary judgment ruling on the due process claim or its finding that the individual Defendants are entitled to qualified immunity.

ABC instead contends that the Court committed clear error in granting summary judgment on the merits of the takings claim and finding that the claim otherwise would be time-barred. Doc. 60 at 2-3. "Clear error occurs when 'the reviewing court on the entire

5

record is left with the definite and firm conviction that a mistake has been committed.'" *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Having reviewed ABC's motion and the record as a whole, the Court is not convinced that it mistakenly granted summary judgment in favor of Defendants.

What is more, ABC's current arguments are nearly identical to arguments it made during summary judgment briefing and oral argument. *See* Doc. 60 at 2. A party seeking reconsideration should not ask the court to "rethink what the court has already thought through – rightly or wrongly." *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998); *see Rodriguez v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00291-TUC-DCB, 2022 WL 16793399, at *2 (D. Ariz. Nov. 8, 2022) ("A party seeking reconsideration must show more than a disagreement with the court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.") (cleaned up); *Weeks*, 246 F.3d at 1236 (the purpose of Rule 59(e) is not to give the losing party "the forbidden 'second bite at the apple'") (citation omitted); *see also* LRCiv 7.2(g)(2) ("No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order."). Nevertheless, the Court will address the arguments ABC makes in its motion to amend the judgment.

### A. Essential Nexus.

ABC contends that the Court erred in finding no triable issue as to whether an essential nexus exists between the District's interest in mitigating the risks of a 100-year flood and the Permit's stabilization requirements. Doc. 60 at 3-4. Specifically, ABC argues there is a genuine factual dispute about the correct 100-year flow rate for the New River, and that under Dillon's lower flow rate, the Permit's stabilization requirements become unnecessary. *Id.* at 4; Doc. 67 at 3. The Court rejected this argument in its summary judgment order, explaining:

> Plaintiffs' taking claim is based on the fact that the District used the FEMA-established flow rate of 39,000 cfs for the New River. Docs. 22 ¶ 66, 45 at 13, 21. But Plaintiffs do not dispute that the District's regulation of floodplains must comport with FEMA flow rates. *See* Docs. 44 ¶ 4, 45 at 16 (citing A.R.S. § 48-3609(M) ("The floodplain regulations adopted by a district pursuant to this chapter are intended to carry out the requirements of [FEMA's] national flood insurance program[.]")). Nor do Plaintiffs dispute that the District applied the FEMA rate when it approved ABC's plan of development and granted the 2017 Permit. *See* Doc. 45 at 13. Indeed, ABC's own engineer has testified that he designed the development plan's excavation and armoring components in compliance with the FEMA flow rate. Doc. 44-5 at 7.

Doc. 56 at 8. ABC has not shown, given these undisputed facts, that the Court clearly erred in finding that no reasonable jury could conclude that the Permit's excavation and armoring requirements bear no essential nexus to the District's duty to reduce flood hazards using FEMA flow rates. *See id.*

ABC's is simply wrong in arguing that a jury, based on competing expert reports, could determine the flow rate to be applied for the New River. Doc. 60 at 4-5, 12; Doc. 67 at 3. FEMA is tasked with determining flow rates for purposes of its flood insurance rate maps, and there is no dispute that at all relevant times the effective FEMA flow rate was 39,000 cfs. *See* Docs. 56 at 3, 64 at 3. ABC presents no persuasive argument or legal authority that a jury could override FEMA, determine the own flow rate based on competing expert reports, and then order the District to pay damages for applying the legally-mandated flow rate.

**B.   Rough Proportionality.**

ABC contends that the Court clearly erred in determining that the Permit's stabilization requirements are proportionate to the impact of ABC's mining operations given the FEMA-established flow rate. Doc. 60 at 7. The Court does not agree.

According to ABC, the District, knowing the FEMA flow rate to be outdated, made no individualized determination regarding stabilization measures required for the accurate flow rate and instead conditioned approval of the Permit on compliance with unnecessary and costly stabilization requirements. *Id.* at 7-10. But the effective FEMA flow rate for

the New River remains at 39,000 cfs, and the District is required to apply that flow rate for local residents to remain eligible for flood insurance under FEMA's national flood insurance program. Doc. 44 ¶ 4.

ABC asserts that it was forced to use the FEMA flow rate and accept the Permit's stabilization requirements because $1,000 fines were accruing daily. Doc. 60 at 9-10. But the fines were assessed because ABC continued to mine in the floodplain without a permit. *See* A.R.S. § 48-3615(A)-(C); *ABC Sand & Rock Co. Inc. v. Flood Control Dist. of Maricopa Cnty.*, No. 1 CA-CV 19-0652, 2021 WL 58145, at *9 (Ariz. Ct. App. Jan. 7, 2021) ("[M]ining in the floodplain without a permit is justification for a fine and ABC admitted that it had operated in the floodplain without a permit."). ABC was forced to use the FEMA flow rate because that is what the law required and the District was not going to issue a permit that did not comply with the law. *See* Doc. 64 at 8.

ABC's reliance on *Dolan* is not helpful. Doc. 60 at 7-8. The plaintiff in that case applied for a permit to expand her store and parking lot located along Fanno Creek. 512 U.S. at 378-79. The city reasonably determined that increasing the amount of impervious surface would increase the quantity and rate of storm water flow from the plaintiff's property, and that keeping the floodplain open and free from development likely would confine the pressures on Fanno Creek. *Id.* at 392-93. The plaintiff therefore was required to leave 15% of her property as open space. *Id.* at 393. "But the city demanded more – it not only wanted the plaintiff not to build in the floodplain, but it also wanted her property along Fanno Creek for its greenway system." *Id.* (cleaned up); *see Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 546 (2005) ("Both *Nollan* and *Dolan* involved Fifth Amendment takings challenges to adjudicative land-use exactions – specifically, government demands that a landowner dedicate an easement allowing public access to her property as a condition of obtaining a development permit."). Here, the District has not demanded that ABC dedicate a public easement as a condition for the Permit.

/ / /

/ / /

8

### C. The District's Alleged Violation of 44 C.F.R. § 65.3.

Noting the installation of dams and diversion channels along the New River, ABC asserts that the District failed to comply with 44 C.F.R. § 65.3, which requires communities to notify FEMA of physical changes affecting flooding conditions. Doc. 60 at 5-8. ABC argues that this alleged regulatory violation supports a constitutional takings claim. ABC has waived this argument for purposes of Rule 59(e) by not raising it on summary judgment. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016); *Scollard v. State Farm Gen. Ins. Co.*, No. CV-21-06145 PSG (PVC), 2023 WL 5543974, at *3 n.1 (C.D. Cal. Aug. 11, 2023); *see also Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003) ("Motions for reconsideration . . . are not the place for parties to make new arguments not raised in their original briefs.").

What is more, even if the District knew in 2017 that physical changes to the New River rendered the 39,000 cfs flow rate inaccurate, ABC presents no evidence showing that the District's compliance with 44 C.F.R. § 65.3 would have resulted in FEMA adopting a materially different flow rate. Indeed, the Cardno report concluded that the 100-year flow rate for the New River is 34,200 cfs., and ABC's own expert confirmed that this flow rate would not change the Permit's armoring requirements. Docs. 46-15 at 8, 46 ¶ 47, 46-37 at 38, 46-38 at 3. Additionally, ABC has not shown that the District's alleged failure to perform a "ministerial duty" under 44 C.F.R. § 65.3 constitutes a constitutional taking. *Wozniak v. Town of Colchester*, 220 A.3d 132, 141 (Conn. Ct. App. 2019).

ABC's reliance on *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23 (2012), is misplaced because that case held, "simply and only, that government-induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection." 568 U.S. at 38. The Court is not persuaded by ABC's citation to *Courtney v. Butler*, 66 F.4th 1043 (7th Cir. 2023), because the case addressed whether *Heck v. Humphrey*, 512 U.S. 477 (1994), "applies when release on parole is denied based not on the parolee's actions but on state officials' alleged failures to do their jobs." 66 F.4th at 1046.

### D. ABC's Alleged Variance Request.

ABC noted in its summary judgment briefing that the District is permitted to grant variances from the regulations. Doc. 45 at 16 (citing A.R.S. § 48-3609(B)(7)). But ABC presented no evidence that it requested a variance. To the contrary, ABC chose to comply with the District's requests and designed a plan of development that included excavation and armoring necessary for the 39,000 cfs flow rate. *See* Docs. 44-5 at 7, 47 ¶ 3.

ABC now asserts that its November 2015 response to the District's request should be deemed a formal variance request. Doc. 60 at 10-12. But the word variance does not appear in the response. What is more, "[v]ariances may be granted only if special circumstances, such as size, shape, topography, location or surroundings of the property, would cause the strict application of the regulations to deprive the property of privileges enjoyed by similar property in the floodplain." A.R.S. § 48-3609(B)(7). ABC did not address these special circumstances in its response. *See* Doc. 46-33 at 3-6. The Court did not clearly err in finding that ABC has not shown that it requested a variance.[3]

### E. The Watercourse Master Plan.

ABC reasserts its argument that the District kept the flow rate artificially high in order to implement its Watercourse Master Plan. Doc. 60 at 13-14. But this argument merely goes to the District's alleged motivation and does not establish a constitutional taking. *See* Doc. 64 at 11. And because the legislative deadline for creating the special district to implement the Watercourse Master Plan lapsed in July 2015, the Court correctly found that ABC's claim that the Watercourse Master Plan was the reason for the Permit's stabilization requirements is not plausible. *See* Doc. 56 at 9-10.[4]

///

---

[3] New regulations adopted in January 2018, several months after the Permit issued, identified the same special circumstances and required an applicant for a variance to meet ten specific criteria. *See* Docs. 64 at 10, 67 at 7; Floodplain Regulations for Maricopa County § 410(A)-(B). ABC does not assert that it ever sought a variance under the new regulations.

[4] ABC's speculation that similar legislation would be passed in a future session (Doc. 60 at 13) does not create a factual dispute for purposes of summary judgment. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

### F. Statute of Limitations.

ABC asserts various arguments, both old and new, that its takings claim did not accrue until 2021. Doc. 60 at 14-18. None has merit.

ABC asserts that a cause of action does not exist until an expert determines the accurate flow rate based on highly technical analysis. *Id.* at 14-15. But ABC presents no legal authority suggesting that such analysis tolls the running of the statute of limitations and provides ABC an indefinite amount of time to hire an expert and bring a claim. *See* Doc. 64 at 14.

ABC further asserts that whether it suspected that the FEMA flow rate was incorrect is irrelevant to determining the accrual date. *Id.* at 15. This too is simply wrong. A claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action[,]" *Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018), and this rule requires the plaintiff to be "diligent in discovering the crucial facts" of its claim, *Bibeau v. Pac. Nw. Rsch. Found, Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999).

ABC contends, without citation to legal authority, that a statement made by a lawyer to a regulatory body does not mean a cause of action has accrued. Doc. 60 at 15. As Defendants note, however, it depends on the nature of the statement made by the lawyer. Doc. 64 at 13. In this case, ABC's counsel explicitly stated in November 2015 – nearly six years before this action was brought – that the District's failure to utilize new flow rate data would result in an unconstitutional taking of ABC's property:

> In these circumstances, when recorded data shows that the District's 20-year-old hydrology inputs would result in unrealistic floodplain management regulations, it is both appropriate and consistent with state and federal law to revise those inputs so as to avoid imposing inappropriate restrictions on the applicant's use of his land. Failure to do so would result in a taking of A.B.C.'s property, in violation of its federal and state constitutional rights.

Doc. 44-4 at 7 (cleaned up). This statement indisputably shows that ABC believed in 2015 that any restrictions on its mining operations based on the outdated flow rate – such as the stabilization work required by the Permit – would result in an unconstitutional taking of its

property. ABC had an obligation to "be diligent in discovering the crucial facts" once it was on notice of this possible takings claim. *Bibeau*, 188 F.3d at 1108; *see* Doc. 56 at 12.

ABC also contends that a jury could determine that the District lulled ABC into believing it could rely on the Cardno report. Doc. 60 at 2, 17-19. ABC could have relied on the report, but has declined to do so because it did not determine the flow rate to be so low that no armoring is necessary.[5]

ABC cites *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2178 (2019), which held that exhaustion of administrative remedies is not required before bringing a takings claim. *Id.* at 15 n.2. Prior to *Knick*, ABC contends, any takings claim would have been dismissed because the parties were involved in administrative proceedings. *Id.* But ABC had no takings claim pending in the administrative proceedings and waited more than two years after the decision in *Knick* to file this action. *See* Doc. 64 at 12.

**IT IS ORDERED:**

1. ABC's motion for a new trial and to amend the judgment (Doc. 60) is **denied**.

2. ABC's motion to strike Defendants' response because it inadvertently was filed five days late (Doc. 65) is **denied**.

Dated this 1st day of April, 2024.

David G. Campbell
Senior United States District Judge

---

[5] Contrary to ABC's assertion, the Court did not err in observing that it seems clear ABC never intended to accept any District study that found the armoring necessary. Doc. 60 at 16 n.3. As noted, ABC hired one expert after receiving the District's study and, upon being dissatisfied with that expert's confirmation of the District's calculations, hired Dillon to opine that the flow rate was low enough to make the excavation and armoring unnecessary. Doc. 56 at 14 n.5.